Davis, J.
The defendants in error sued the plaintiff in error in two separate actions in the superior court of Cincinnati, to recover judgments on two promissory notes, given by the plaintiff in error, for $20,355.52 and' $20,000, respectively. The railway company did not deny its liability on the notes but filed a cross-petition in each case setting forth that on or about July 7, 1904, it was the owner of thirtv-five hundred bonds, each of the amount of $1,000, payable to bearer July 1, 1954, bearing four and one-half per cent, interest, secured by mortgage to The Commonwealth Trust *316 Company of St. Louis, one of the obligors in said, bonds being The Toledo Railway & Terminal Company, an Ohio corporation; that on said date The Cincinnati, Hamilton & Dayton Railway Company and another corporation, The Pere Marquette Railroad Company, jointly and severally guaranteed the payment of the principal and interest of all of said bonds as the same should become due according to the tenor thereof; that thereafter Rudolph Kleybolte & Co., defendants in error here, purchased from The Cincinnati, Hamilton & Dayton Railway Company, the plaintiff in error here, twenty-five hundred of said bonds for $970 and accrued interest for each of said bonds, and eight hundred' of said bonds for $975 and accrued interest for each of said bonds, being less than the par value thereof; and that said Rudolph Kleybolte & Co. .thereafter sold all of said bonds with said guaranty indorsed upon each of them, for value to innocent purchasers thereof.
The Cincinnati, Hamilton & Dayton Railway Company also averred in its cross-petition, that at the time of such purchase and sale of said bonds Rudolph Kleybolte was a member of the firm of Rudolph Kleybolte & Co. and also a director of The Cincinnati, Hamilton & Dayton Railway Company; and that by reason of the foregoing facts Rudolph Kleybolte & Co. became indebted to The Cincinnati, Hamilton & Dayton Railway Company for the difference between the par value of said bonds and the price paid for the same, to-wit, $95,-000, with interest thereon. The railway company pleads this amount as a set-off to the actions of Rudolph Kleybolte & Co. against it and asks judgment for the difference between the said $95,000 *317 and interest and the amount for which Kleybolte & Co. sue upon the notes.
Kleybolte & Co. demurred to the cross-petition in each case upon the grounds that the facts stated in the cross-petition do not entitle the railway company to any relief, and that the facts stated in the cross-petition do not constitute either a set-off or a counter-claim to the claim on the notes. The superior court in special term sustained the demurrers to the cross-petitions and gave judgment for the plaintiffs below; and these judgments- were afterwards affirmed by the superior court in general term.
The contention of the plaintiff in error rests upon a construction of Section 3313, Revised Statutes. The section is as follows:
“All capital stock, bonds, notes, or other securities of a company, purchased of a company by a director thereof, either directly or indirectly, for less than the par value thereof, shall be null and void.”
That the phrase, “securities- of a company,” is ambiguous is not disputed by either party; but the plaintiff in error strenuously insists that whether it be construed as stock, bonds, notes or other securities belonging to a company, or as stock, bonds, notes or other securities issued by a company, in either case, the purchase, directly or indirectly, by a director of the company owning or issuing the securities is illegal; because, it is argued, the guaranty by one company of the bonds of another company makes the bonds of the latter company a security issued by the former. And to make effective the remedy sought by the cross-petitions upon this theory, it is also ingeniously argued that the *318 phrase, “null and void,” may be and should be construed as voidable only.
Notwithstanding the able and elaborate presentation of this view, we have not been persuaded to accept it as correct. When we compare Section 3313 with the prior statutes from which it is condensed in the revision, it seems to us that the manifest purpose of this enactment was to prevent the creation and sale to its directors of the capital stock or other obligations of the company for less than the par value thereof; and to enforce such purpose it was provided that all such transactions should be null and void. This would seem to be the scope of Section 2 of the act of December 15, 1852 (51 O. L., 286); and in the amendment to this section, passed April 27, 1872 (69 O. L., 173-174), the prohibited act is still confined to “any of the capital stock or any of the bonds, notes or other securities of such company of ivhich he is or may be a director,” using the word “securities,” as we take it, as the synonym of “evidence of indebtedness.” See Century Dictionary and Webster’s Dictionary. Thus the legislation on that subject stood, when in the codification of our statutes it became the present Section 3313, Revised Statutes. We see no evidence of an intention to enlarge the purview of the statute; but we think we find conclusive evidence of a purpose to limit its operation to the obligations of the company whose directors might otherwise defraud it. If it were intended to enlarge the scope of the prohibition so as to include not only the stock and securities, that is, evidences of indebtedness, issued by the company, but also all stocks and securities issued by other companies and of which it might become possessed, that purpose *319 would have been exactly and unambiguously expressed by omitting the words “of a company” which appear after the word “securities.”
Our construction is reinforced by considering the highly penal character of the section. The clear, unmistakable. language is, that all capital stock, bonds, notes or other securities, purchased by a director of the company for less than the par value thereof shall be null and void. It does not provide that the purchase .shall be void or that the transaction shall be voidable at the election of the wronged company, but it declares that the securities thus created and dealt with shall be nullities in the hands of the purchaser. It is easy to understand the severity of the penalty when we regard the purpose of preventing the creation of unwarrantable obligations upon the ■ corporation by its directors and the perpetration of constructive, if not actual, fraud in dealing with them; but it can hardly be believed that securities of other companies for which value has been paid, would be declared void because improperly dealt with by the company’s trustees. In the latter case it is more reasonable that the sale and purchase should be declared void and not the securities themselves, as in this statute.
But the plaintiff in error meets this construction of the statute with this argument: “The present section of the statute covers as well dioses in action executed by a railroad company as those belonging to one. The bonds named in the cross-petition in this case fall under designation of either óf above classes. They are bonds ‘of’ The Cincinnati, Hamilton & Dayton Railway Company, because they are the property of that company. They are also *320 bonds 'of’ that company because they are bonds whose payment, is guaranteed by that company; which fact makes them as much the obligation of The Cincinnati, Hamilton & Dayton Railway Company as they are the obligation of The Toledo Railway & Terminal Company, the primary obligor. The Cincinnati, Hamilton & Dayton Railway Company’s guaranty of payment of those bonds is an absolute and unconditional undertaking; and a breach thereof occurs by non-payment of the bonds without more. The same act or omission that would give rise to an action on the bonds against the primary obligor gives rise to an action against The Cincinnati, Hamilton & Dayton Railway Company, the guarantor.”
This reasoning is plausible but unsound. It is true that the payment of these bonds is absolutely and unconditionally guaranteed by the plaintiff in error; but it is not true that, before default by the primary obligor, such guaranty makes them as much the obligation of the guarantor as the obligation of the primary obligor. The contract of the guarantor is that he will pay if the obligor does not. The contract of guaranty in these cases is “absolute and unconditional” to this extent only, that-the guarantor will pay when the obligor does not pay at maturity; and the guarantor is not entitled to demand and notice or the exercise of diligence to collect from the principal obligor before suit brought upon the guaranty. This is precisely what was decided in the two cases cited for the plaintiff in error, Clay v. Edgerton, 19 Ohio St., 549, and Neil v. Board of Trustees, 31 Ohio St., 15, 22. So that whatever may be the nature of the guaranty, and whatever may be necessary to make effective *321 the remedy against the guarantor, the bonds are not primarily the guarantor’s debt. Indeed by its very terms it does not become the guarantor’s debt until the principal debtor makes default in payment. Therefore in ordinary business language guaranteed bonds are not spoken of as bonds of the guarantor, but as the bonds of the principal or original obligor, just as indorsed promissory notes are always spoken of as notes of the maker and not of the indorser. It is in this sense and according to such customary speech that we understand the legislature to have intended 'to be understood in enacting section 3313, Revised Statutes. The judgment below is

Affirmed.

Crew, C. J., Summers, Spear and Siiauck, JJ., concur. Price, J., did not participate.